AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
MANOJKUMAR N. DESAI
a/k/a Manot Desaz
a/k/a Manoj Desai
a/k/a "Mike"

*Defendant(s)*

Case No. 5:26-mj-1275-PRL

SEALED

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 2026 through June 5, 2026 in the county of Citrus in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to commit wire fraud. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

Det. Joshua F. Cutlip # 0721
*Complainant's signature*

Task Force Officer, Joshua F. Cutlip, USSS
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: October 1, 2026

P. Lammens
*Judge's signature*

City and state: Ocala, Florida

United States Magistrate Judge Philip R. Lammens
*Printed name and title*

**STATE OF FLORIDA** **MDFL CASE NO. 5:26-mj-1275-PRL**

**COUNTY OF MARION**

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Joshua F. Cutlip, being first duly sworn, hereby state the following:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Task Force Officer (TFO) with the United States Secret Service (USSS) and have been since August 20, 2025. I am also a Fraud Detective with the High-Tech Crimes Unit & Criminal Investigation Division (HTCU-CID) of the Citrus County Sheriff's Office (CCSO) and have been since July of 2010. As part of my duties as a USSS TFO, I have received training and experience in the areas of cybercrime, money laundering, counterfeit currency detection, and cryptocurrency, including cryptocurrency tracking and tracing techniques. Additionally, as part of my duties as a Fraud Detective with HTCU-CID, I have conducted, participated in, and assisted with investigations involving high-technology and economic crimes

2. Throughout my training experience as a law enforcement officer, I have learned how to conduct physical surveillance, undercover investigations, interview sources and defendants for information, serve subpoenas, and execute arrest and search warrants.

3. As a result of my training and experience as a USSS TFO, I am familiar with the following federal criminal statutes:

- **18 U.S.C. § 1349:** It shall be unlawful for any person to attempt or conspire to commit wire fraud, in violation of 18 U.S.C. § 1343.

- **18 U.S.C. § 1343:** It shall be unlawful for any person to have devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, to transmit or cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice

## PURPOSE OF THE AFFIDAVIT

4. I am submitting this affidavit in support of a criminal complaint charging the defendant, Manojkumar N. DESAI (DESAI), with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. I have obtained the information set forth in this affidavit from my personal knowledge due to my direct involvement in this investigation and from reports and affidavits drafted by other law enforcement officers who were also directly involved in this investigation. This affidavit is intended only to show that there is probable

cause for the arrest of DESAI, it does not contain all my knowledge about the investigation.

## PROBABLE CAUSE

5. On or about April 20, 2026, in Citrus County, within the Middle District of Florida, T.A.M.S. received a phone call from telephone number (202) 425-9843. T.A.M.S. is a victim of the fraud scheme and is hereinafter referred to as "Victim." The caller represented himself as William Long[1] (herein after referred to as "Long"), an "agent" of the U.S. Treasury Department, and provided Victim with his credentials, including his badge number (PN12-27) and identification number (DC08918). Long convinced Victim that she was the victim of a multi-state identity theft ring, where her identity had been illegally used by fraudsters. Victim was convinced by Long that her financial accounts had been compromised and that in order to protect her assets, she had to withdraw all of her money from her accounts and provide it to him to protect it. Long assured Victim she would get all her money back and provided her with a security code (RM1409) that she was to use whenever she spoke to him or officers she met for the purpose of

[1] I have confirmed with Sherry Georges with the Office of the Inspector for the U.S. Treasury Department that there is no special agent named William Long.

safeguarding her money. Afterward, Long continued to communicate with Victim by telephone in furtherance of the scheme to defraud.

6. On or about April 27 - 28, 2026, Victim withdrew a total of $32,000 from her savings and checking accounts at Regions Bank,[2] respectively. On or about, April 28, 2026, at Long's direction, Victim placed the cash from these accounts in a box and delivered it to an unknown courier in the parking lot of a plaza near the intersection of West Hampshire Boulevard and CR-491 in Citrus County.

7. On or about May 19, 2026, at Long's direction, Victim initiated a $150,000 wire transfer from her Regions Bank savings account at the Regions Bank Inverness Main Branch in Citrus County to the following beneficiary:

Beneficiary Information:
Wearon Global, Inc.
4539 N22nd St. Ste. R
Phoenix, AZ 85016

Target Bank Information:
JP Morgan Chase
New York, NY

8. On or about May 20, 2026, as instructed by Long, Victim initiated the purchase of 150-1 oz. gold coins online by placing a $20,000 deposit on the purchase with a Visa card. Victim then went to the Regions

[2] Regions Bank is insured by the Federal Deposit Insurance Corporation (FDIC). The bank is headquartered in Alabama.

Bank branch in Beverly Hills (within Citrus County) and initiated a $691,500 wire to Imperial Gold Exchange (located within the Middle District of Florida) to Imperial Gold Exchange's bank, Lake Michigan Credit Union in Grand Rapids, Michigan. As these wire transactions occurred across state lines, they have affected interstate commerce.

9. On or about May 21, 2026, Imperial Gold Exchange received the wire and delivered 150-1 oz. Gold Eagle coins to Victim at her residence in Citrus County. That same day, Long instructed Victim to wrap each plastic sleeve in duct tape and place them in a box and deliver them to an "officer" who would meet her in the parking lot of a Publix shopping plaza in Citrus County. Victim was also instructed by Long to take photos of the front and back of her car, including her license plate, so the officer would know what she was driving. Long told her that the officer would provide her with the security code that Long had previously provided to her. Victim stated that when she arrived at the parking lot of the Publix plaza, two unknown male "officers," pulled up in a car alongside her. One of the officers, later determined to be DESAI, provided the security code to Victim and Victim in turn gave DESAI the box containing the gold coins.

10. On or about May 22, 2026, Victim called the CCSO to report fraud involving a large financial loss. That same day a CCSO Deputy was

dispatched to Victim's residence in Citrus County in response to the reported fraud, where Victim relayed the above information to him.

11. On or about May 28, 2026, the CCSO received a tip identifying the courier who had picked up the gold coins from Victim on or about May 21, 2026, as DESAI.

12. On or about June 5, 2026, CCSO Det. Estepp and I, made contact with L.C. L.C. advised us that DESAI had asked him/her to sell gold coins for him after assuring him/her that the gold coins were not stolen. L.C. provided TFO Cutlip and Det. Estepp with a receipt dated May 27, 2026, for the sale of 3 gold coins in Pinellas County, within the Middle District of Florida, for which he/she received three checks totaling $12,873. L.C. then deposited the three checks into a joint Truist Bank[3] account he/she shared with DESAI. L.C. indicated that the money was immediately withdrawn from their bank account by DESAI.

13. On June 5, 2026, DESAI was arrested pursuant to a warrant on the state charge of Grand Theft, ($100,000 or more) in violation of Fla. Stat. § 812.014(2)(A)(1). DESAI was taken to the St. Petersburg Police Department where Det. Estepp and I conducted a recorded post-*Miranda* interview with

[3] Truist Bank is insured by the FDIC. The bank is headquartered in North Carolina.

DESAI. During the interview, DESAI stated that about two weeks prior, he had received a phone call from an individual in India ("Conspirator 1") who threatened to kill DESAI's "people" in India if he did not do as instructed. DESAI indicated that he initially had refused, but eventually agreed to participate in the scheme to defraud.

14. Conspirator 1 instructed DESAI to pick up a package and sent him a What's App message with directions to a Publix plaza located about one and a half hours from St. Petersburg, just south of Ocala, in the Middle District of Florida. DESAI stated that when he arrived at the parking lot of the Publix plaza, there was a "white lady" waiting for him with the package, who was determined to be Victim. During the pickup, DESAI was on the phone with Conspirator 1 via What's App. Conspirator 1 described Victim to DESAI and told DESAI that she would ask him for a security code, which Conspirator 1 provided to DESAI. When Victim asked DESAI for the security code, he provided the code he was given by Conspirator 1 and Victim placed the package of gold coins in the backseat of the car DESAI was in.

15. DESAI further indicated that Conspirator 1 instructed him to sell the gold coins and then electronically wire the proceeds to other conspirators in India. DESAI admitted selling some of the gold coins, including having

L.C. sell gold coins on his behalf. He further admitted sending a $10,000 wire to a conspirator (Conspirator 2).

16. DESAI's Bank of America account records obtained through Grand Jury subpoena revealed that on or about May 29, 2026, DESAI sent a $10,000 wire to a beneficiary in Alabama.

17. On or about June 6, 2026, a search warrant was executed on DESAI's residence. A total of 80 gold coins and approximately $55,970 cash was recovered from his residence.



18. The known intended loss to Victim is approximately $873,500.00.

**CONCLUSION**

19. Based on the foregoing, I respectfully submit that there is probable cause to believe that DESAI has committed a violation of: 18 U.S.C. § 1349.

Det. Joshua F. Cutlip #0721

**Joshua F. Cutlip**
**USSS Task Force Officer**

*Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 4(d) before me this* ***1st day*** *of* ***October,*** *2026.*

The Honorable Philip R. Lammens
United States Magistrate Judge